### Ernest Foster v. The State.

No. 2516. Decided April 29, 1903.

**1.—Murder—Evidence—Harmless Error.**

On a trial for murder, where the testimony tended to show, on the one
hand, that deceased was doing nothing when shot; and on the other, that
defendant acted in self-defense, error in the admission of testimony as to
the character of a woman deceased was accompanying from church, but who
was not present at the time of the homicide, was harmless, it not being
shown how its admission prejudiced defendant's rights.

**2.—Same—Self-Serving Declarations.**

Declarations of defendant, made the morning after the homicide, tending
to prove that he acted in self-defense, were self-serving and inadmissible.

**3.—Same—Charge—Self-Defense—Manslaughter.**

See opinion for a charge upon self-defense and manslaughter which,
taken as a whole, rendered absolutely harmless any apparent error, inas-
much as the jury were instructed to consider all the acts and circumstances
in evidence in passing upon the guilt of defendant.

**4.—Same.**

See opinion for a charge upon manslaughter held correct, and applicable
to the evidence.

Appeal from the District Court of Robertson. Tried below before
Hon. J. C. Scott.

Appeal from a conviction of murder in the second degree; penalty, five
years imprisonment in the penitentiary.

Appellant was charged by indictment with the murder of William
Johnson, on the 17th day of July, 1902, by shooting him with a gun.
The indictment charged a murder on implied malice and of the second
degree.

The following statement of the case is taken from appellant's brief:
The evidence shows that there had been no previous trouble between
the deceased and defendant; that defendant on the day of the homicide

was at the home of the deceased on a friendly visit; that if any malice existed it was in the breast of the deceased; that on the night of the killing, and some time prior thereto, defendant accosted deceased in a friendly manner and they walked together some distance; that during that time deceased had a rock in his hand which was seen by several witnesses but which was not seen by defendant (the moon was shining); that defendant at this time did not have his target rifle, and that after they had walked thus from between a half mile to a mile, the defendant walked a short distance ahead and got his target rifle from one Marsh Davis, who was carrying it for him, and that shortly thereafter deceased and his brother overtook defendant and they walked on together, deceased and his brother finally getting a little in front or ahead of defendant; that deceased, after talking a short while with Marsh Davis, lingered behind until he was overtaken by defendant and engaged in a conversation with defendant; that during this conversation defendant made the remark that deceased had been talking about him all of the year and that he was getting tired of it, whereupon deceased became enraged and turned around facing defendant and said, "I am going to kill you, God damn you," and at once threw a large rock at defendant which struck the brim of his hat; that deceased's brother, Anderson Johnson, then threw a rock at defendant which struck him on his left arm; that in attempting to dodge this rock his hat fell off; that as soon as deceased had thrown his rock he drew his right arm back and was coming over or down with his right arm as if to throw at defendant again, whereupon defendant shot him, or at him, and immediately run; that he did not know whether the shot had hit deceased or not; that he did not intend to kill deceased, and that he was badly frightened; that as soon as he ran off deceased's brother threw a rock at him again; that at this time the moon had gone down and it was dark; that the gun used was a small-size skeleton target rifle 22 caliber, about thirty inches long; that deceased fell on his right side and a rock was found in his right hand, while still another rock was found in his left coat pocket after his death; that there were no rocks at the place where the shooting took place, but that there were rocks in the road about one-half a mile back from where the shooting occurred; that defendant is a boy 17 years old, while deceased was a man 22 or 23 years old; that defendant the next morning surrendered to Jeff Hammond, a white man, and was brought to town and placed in jail.

No further statement necessary.

*Simmons & Crawford,* for appellant.

*Howard Martin,* Assistant Attorney-General, for the State.

BROOKS, JUDGE.—Appellant was convicted of murder in the second degree, and his punishment assessed at five years confinement in the penitentiary.

The first bill complains that while the mother of deceased was on the stand she was permitted to testify when deceased left home and with whom. She testified that deceased passed her house between 3 and 4 o'clock, with Carrie Bennett, going to church; that she objected to deceased going with Carrie Bennett, on account of her bad character. Testimony tending to show the bad or lewd character of Carrie Bennett was objected to by defendant, on the ground that the same was immaterial, did not in the slightest manner tend to prove the guilt of defendant, and was calculated to prejudice defendant's cause in the minds of the jury, and prevent defendant from having a fair trial; and was not admissible for any purpose. The only connection Carrie Bennett is shown to have had with the homicide was the fact that deceased and Carrie Bennett were returning from church, when approached by defendant, and an apparently friendly conversation occurred. Then some one called Carrie Bennett and took her away. Some time subsequent to this, deceased and defendant became involved in a colloquy, which afterward resulted in the death of deceased. The State's testimony tends to show deceased was doing nothing at the time he was shot; and the testimony of defendant tends to show he had thrown one rock at defendant and was in the act of throwing another, and hence defendant was justified in shooting in his self-defense. How or in what way the character of Carrie Bennett could throw any light on the transaction does not appear from the bill, and how or in what way it could have prejudiced defendant's rights does not appear. Concede the testimony was inadmissible for any purpose, yet the same did not injure appellant's right.

Bill number 2 complains that Jeff Hammond, a white man, was not allowed to testify that he saw defendant the morning after the shooting. Appellant asked the witness if defendant said anything to him, and the district attorney objected to the witness answering the question, which objection was sustained by the court. Appellant insists that, if permitted to answer, witness would have stated that defendant told witness that on the night before he (defendant) shot William Johnson, and, at the time he shot both deceased and his brother were throwing rocks at him; that he shot and ran, and has since learned he killed deceased; that he did not intend to kill deceased, and did not know he had hit him until some time afterward. The ground of the State's objection was because the same was a self-serving declaration of appellant. Appellant insists the same was admissible, as throwing light on the acts, conduct and intention of defendant at the very time he shot deceased. The acts and declarations of defendant as detailed above were clearly self-serving declarations, and the court did not err in so holding.

The third bill complains of the following portion of the charge of the court: "If you believe from the evidence beyond a reasonable doubt that defendant with a gun, the same being a deadly weapon from the manner of its use, shot and killed William Johnson, but you further believe that before the shooting, deceased had told defendant he would

kill him and had thrown a rock at him, and at the time of the shooting deceased had his arm drawn as if to throw a rock or had his arm coming down as if to throw a rock and had a rock in his hand, and that deceased's brother had thrown or was about to throw a rock at defendant, and that said conduct and language on the part of deceased and his brother created in the mind of defendant sudden passion, such as anger, rage, sudden resentment or terror, and that, in such condition of mind, defendant shot and killed deceased, and that at the time of shooting it did not reasonably appear to defendant, from the words and acts of deceased, or from the conduct of deceased's brother, if you believe deceased and his brother were acting together, that defendant was in danger of losing his life or suffering serious bodily injury, you will find defendant guilty of manslaughter," etc. The objections urged are, because the jury were required to believe beyond a reasonable doubt, not only that deceased had told defendant that he would kill him, and had thrown a rock at him, and at the time of shooting deceased had his arm drawn back as if to throw a rock or had his arm coming down as if to throw a rock, but also that he had in his hand a rock at the time—for the reason that the declaration of deceased, coupled with his acts and conduct at the time, were more than sufficient to arouse in the mind of defendant, and did, in fact and in truth, arouse such terror, as to render him incapable of cool reflection, without requiring the jury further to believe, beyond a reasonable doubt, that deceased had a rock in his hand. This last objection is more a question of fact than a question of law. It may be that all the acts existed as detailed by the court, and yet not have aroused in the defendant's mind any passion, anger or resentment, such as to render his mind incapable of cool reflection. If so, appellant would.be guilty of murder in the second degree. The evidence is undisputed that deceased had a rock at the time, and we do not think this phase of the charge could have injured appellant. Furthermore, the charge, taken as a whole, renders absolutely harmless any apparent error, inasmuch as the court tells the jury they must consider all the acts and circumstances in evidence in passing on the guilt of accused.

Appellant further insists that the charge on manslaughter is incorrect, in that the same required the jury to believe beyond a reasonable doubt that deceased's brother had thrown or was about to throw a rock at defendant, when the acts, conduct and declarations of deceased alone, without being coupled with that of his brother, were sufficient of themselves to arouse in defendant's mind such terror as to render it incapable of cool reflection. This criticism is not correct. We have carefully examined the charge of the court, and, when considered as a whole, it is a clear exposition of the law applicable to the facts. The criticisms made by appellant to the charge are not correct. No error appearing, the judgment is affirmed.

*Affirmed.*